**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| JAMES STANLEY BRANSCOMB, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:06-CV-142 (WLS) |
| | : | |
| RAY MABUS, Secretary of the | : | |
| Department of the Navy, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

Before the Court is Defendant Ray Mabus' Motion for Summary Judgment (Doc. 80). For the reasons that follow, Defendant's motion is **GRANTED**.

**I.      Procedural Background**

Plaintiff James Stanley Branscomb (Branscomb) is a former welder at the Marine Corps Logistics Base (MCLB) in Albany, Georgia. He alleges his employer, the Department of the Navy (the Navy), discriminated against him on the basis of a disability and retaliated against him for engaging in statutorily protected activity, in violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

On September 29, 2011, the Court entered judgment in favor of the Navy on all of Branscomb's claims. Branscomb appealed, and the Eleventh Circuit affirmed the grant of summary judgment on claims, except a claim of retaliation. On that claim, the Eleventh Circuit "conclud[ed] that the district court erred in granting the Navy's motion for summary judgment as to Branscomb's claim of retaliation, in violation of the ADA and

1

the Rehabilitation Act, because it failed to address this claim." It remanded for the Court to address it.

Because of the Eleventh Circuit's ruling, a single claim of retaliation under the ADA and Rehabilitation Act remains. As to that claim, in his complaint, Branscomb alleges that the Navy engaged in post-employment retaliation by interfering with his worker's compensation benefits and by rescinding a job offer.[1] The Parties have both moved for summary judgment on that claim, and the Court grants it in favor of the Navy.

## II.    Statement of facts

The Court draws the following statement of facts from the Parties' statements of material facts; from the complaint and answer; and from the record in this case.[2] Branscomb began working at the MCLB in 1997 as a welder. In 2003, he suffered an injury to his shoulder. From this and other injuries, Branscomb received worker's compensation benefits from the federal Office of Workers Compensation Programs (OWCP).

On March 26, 2004, the Navy ended Branscomb's employment because he failed to maintain welding certifications required for his employment. (Doc. 71-2 at 60.) A few days later, Branscomb appealed his termination to the Merit System Protection Board (MSPB), where he alleged the Navy discriminated against him because of a disability, his shoulder injury. (Doc. 71-2 at 62–67.) On July 27, 2005, the MSPB ruled that the Navy did not discriminate against Branscomb.

---

[1] Branscomb attempts to expand his retaliation claim to include a number of pre-termination acts of retaliation. But he never alleged these grounds of retaliation in his recast complaint, so the Court does not consider them.  Moreover, a close reading of these claims shows they are resuscitations of previous claims the Court already dismissed in this case and in other lawsuits.

[2] Under the Court's local rules, "[a]ll material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56. Although Branscomb disputes most of the Navy's facts, he either fails to identify evidence or points to exhibits that have no responsive relevance. In those cases, the Court has accepted the Navy's facts as true, as long as they are also supported by record evidence.

Joseph J. Blanton (Blanton) is the Injury Compensation Program Administrator (ICPA) at the MCLB. He has held that position since 2000. As the ICPA, his job entails communicating with the OWCP. He often works with injured OWCP claimants to obtain benefits and, when necessary, provides statements controverting their claims. Blanton performs his work independently of any ongoing discrimination claims.

The Navy disputed Branscomb's claims for worker's compensation on several occasions. On November 20, 2001, years before Branscomb appealed his termination to the MSPB, the Navy sent a letter to the OWCP disputing that a September 2001 injury was work related. (Doc. 55-3 at 13.) Branscomb sued the Navy in 2004 for sending this letter. *See Branscomb v. Johnson*, 1:04-cv-4 (WLS) (M.D. Ga. Jun. 22, 2005) (Sands, J.) (granting summary judgment on various Title VII and Privacy Act claims arising from the Navy's alleged interference with Branscomb's worker's compensation).[3]

On April 7, 2004, Blanton advised Branscomb to complete a Claim for Compensation (Form CA-7) to apply for compensation for lost wages and to send the completed from to his office to forward to the OWCP. Upon receipt of the Form CA-7, Blanton mailed it to the OWCP. In connection with his duties as ICPA, Blanton also informed the OWCP the reasons for Branscomb's termination. His letter accompanying the Form CA-7 stated:

> [He] was given ample time to prepare for and practice for testing on tasks required for certification. These tasks were well within the physical restrictions of no work over shoulder height and no lifting over 25 pounds. Mr. Branscomb apparently could not perform these tasks satisfactorily and therefore management issued him a letter of termination.

(Doc. 80-2 at 7.)

---

[3] In total, Branscomb has filed four lawsuits in this Court from the same nexus of facts.

After the MSPB issued its decision, Blanton wrote the OWCP on September 22, 2005, to inform them of the MPSB's ruling. The letter restated the Navy's position that it fired Branscomb for failing to maintain his certifications. It also stated that "[t]he enclosure," a copy of the MSPB decision, "is forwarded to OWCP to provide authority to take what ever [sic] action required [to] recover compensation payments and/or stop future compensation payments to the Claimant." (Doc. 80-2 at 8.)

Despite these letters, Branscomb continued to receive worker's compensation.

In 2005, after learning Branscomb was willing to work in a light-duty position, Blanton found him a job as an Emergency Services Dispatcher in the Provost Marshal Office of the Public Safety Division of the MCLB. He mailed Branscomb on January 15, 2006, offering him the job. Branscomb accepted.

At the direction of his supervisor, Carl A. Dervan, Blanton rescinded the job offer on March 3, 2006. According to Dervan, Branscomb was likely offered what is considered an "overhire billet," a temporary position with potential of becoming permanent. This position probably never materialized because the incumbent dispatcher did not leave or retire as expected and multiple overtire billets were cut by higher command.

## III.    Discussion

### A.  Standards for Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Hoffman v. Allied Corp.*, 912 F.2d 1379,

1383 (11th Cir. 1990).  A fact is "material" if it is a legal element of the claim under the applicable substantive law and it might affect the outcome of the nonmoving party's case. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. See *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex Corp.*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must provide "enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986)).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict.  *Celotex Corp.*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.  However, the Court must grant sum-

mary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### B. Analysis

The ADA and the Rehabilitation Act make it unlawful for employers to retaliate against employees for engaging in statutorily protected activities. 42 U.S.C. § 12203(a); 29 U.S.C. § 794(d).The Eleventh Circuit analyzes ADA and Rehabilitation Act retaliation claims under Title VII's rubric. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1366 (11th Cir. 1999) (*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284–85 (11th Cir. 1997)). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *Id.* He must show (1) he engaged in a statutorily protected activity, (2) that he suffered an adverse employment action, and (3) that the protected activity was causally connected to the adverse employment action. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1316 (11th Cir. 2007) (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002)). Once the plaintiff establishes the *prima facie* case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the challenged action. *Farley*, 197 F.3d at 1336. "The plaintiff then must 'demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation.'" *Id.* (quoting *Stewart*, 117 F.3d at 1287).

In this case, the Navy is entitled to judgment as a matter of law as to every ground of retaliation. As to Blanton's letters to the OWCP, Branscomb has failed to establish his *prima facie* case. Neither of these letters amounted to materially adverse actions that might dissuade a reasonable worker from making a claim of discrimination. *See Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The letters conveyed accu-

6

rate information to the OWCP. Branscomb has conceded he could not complete the welding certifications, with or without reasonable accommodation, and they were undisputedly condition precedents to his employment. (Doc. 65 at 16.) It is also undisputed the MSPB ruled against him. The OWCP is not required to accept the employer's version of the events and, ultimately, Branscomb received worker's compensation in spite of the letters. A reasonable worker would not be dissuaded from making a charge of discrimination simply because his employer might exercise its authority under OWCP regulations to report accurate information about a worker's compensation claim. *See Cantry v. Fry's Elecs., Inc.*, No. 1:09-cv-3508, 2012 WL 1038619, at *14 (N.D. Ga. Feb. 2, 2012) ("This Court is unable to conclude that a reasonable worker would be dissuaded from opposing discrimination or filing a charge of discrimination because his or her employer may report accurate information to the DOL.").

Even if Branscomb had established his *prima facie* case, the Navy would still prevail because Branscomb failed to show Blanton's legitimate nondiscriminatory reason for sending the letters was a pretext. The Navy claims Blanton contacted the OWCP in compliance with federal regulations and as part of his normal job duties. Department of Labor regulations allow employers to contest an employee's claim for worker's compensation. 20 C.F.R. § 10.117. The Navy availed itself of this option even before Branscomb raised a claim of discrimination.  Branscomb did not provide any evidence or argument to suggest Blanton's fulfillment of his normal job duties as ICPA was a pretext for retaliation.

Branscomb's claim that the Navy retaliated against him by rescinding his job offer is equally unavailing. He presented no evidence to establish a causal link between the protected activity and the adverse action. Blanton offered and revoked the job offer al-

7

most an entire year after the MSPB ruled against Branscomb. Additionally, the Navy claims it rescinded the job offer because the position was no longer available. Branscomb did not provide any evidence or argument even suggesting this explanation was a pretext for retaliation.

Throughout his response brief, Branscomb repeatedly returns to an allegation that Blanton misplaced a paper describing his permanent restrictions in a previous injury file. It is unclear how this pre-termination event pertains to Blanton's communication with the OWCP or the rescission of his job offer. Other than his unsupported allegations that Blanton acted illegally and incompetently, Branscomb does not explain the relevance of this event to his claim of retaliation, and the Court is independently unaware of a connection.

For those reasons, the Court concludes that the Navy is entitled to summary judgment on Branscomb's claim of retaliation. To recap, Blanton's two letters to the OWCP were not materially adverse actions, and he sent them in compliance with federal regulations and as part of his regular job duties. Branscomb did not point to any evidence that the offer and rescission of his job offer was causally connected to his MSPB appeal. The Navy also had a legitimate nondiscriminatory reason to revoke the offer—the job's unavailability—and Branscomb did not provide anything other than conclusory statements and empty rhetoric to demonstrate that reason was a pretext.

## IV.    Conclusion

The Navy's Motion for Summary Judgment (Doc. 80) is **GRANTED**. Branscomb's motion for summary judgment (Doc. 79) is **DENIED** as moot.

**SO ORDERED**, this   20th   day of September 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**

9